IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bobbie Bellinger,<br>    Plaintiff,<br><br>v.<br><br>American Indian Health Services of<br>Chicago, Kenneth Scott, Roxanne<br>Lavallie-Unabia, June Gerdes and Does<br>1-3<br>    Defendants. | Case No. 21-cv-4907<br><br>Jury Demanded |

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Bobbie Bellinger, brings this lawsuit to redress over a decade of sexual assault and harassment at the hands of her supervisor, Defendant Kenneth Scott, and for retaliation against her for filing EEOC charges to redress these horrifying events. Ms. Bellinger also sues Defendant Kenneth Scott in his personal capacity for assault and battery and intentional infliction of emotional distress. Ms. Bellinger sues Board Member June Gerdes, for negligence and former Board member and current Executive Director Roxanna Lavallie Unabia, for negligence and for defamation and interference with contract.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §1331, and over her state law claims under 28 U.S.C. §1367(a) because they arise out of the events and facts leading to her Federal claims.

3. Venue is proper in this judicial district as the facts and events giving rise to Plaintiffs' claims occurred in this judicial district

## THE PARTIES

4. Plaintiff, Bobbie Bellinger, worked for Defendant American Indian Health Services of Chicago since 2003.

5. Defendant, American Indian Health Service of Chicago, Inc. (AIHS) is a non-profit which provides health services to the American Indian community.

6. Defendant, Kenneth Scott is the former Executive Director of Defendants Indian Health Services of Chicago and was Plaintiff's supervisor and is sued individually.

7. Defendant, June Gerdes is a board member of AIHS and is sued individually.

8. Defendant, Roxanne Lavallie-Unabia, is a former board member of AIHS and is currently its Executive Director and is sued in her individual capacity.

## FACTUAL BACKGROUND

9. Plaintiff Bobbie Bellinger worked for Defendant American Indian Health Services of Chicago in roles with increasing responsibility. During the course of her employment, she pursued studies to complete her BA and earned an MA in Non-Profit Administration in 2011. Her job evaluations regularly rated her as excellent and exceeding standards.

10. In 2004, after Scott had been at AIHS for one year he began to harass and sexually abuse Plaintiff. He would peek down her blouse. Then he got more aggressive and would push her shirt open so he could look down at her breasts.

11. Scott escalated his physical attacks over time. He would undo Ms. Bellinger's bra, squeeze her breasts extremely hard to the point where she would almost cry.

12. He then began putting his hands down Ms. Bellinger's pants once or twice every day, if they were in the office together.

13. Ms. Bellinger underwent a psychological examination consisting of numerous assessments and evaluations as part of her process of dealing with the trauma caused by Scott.

14. Ms. Bellinger recounted how she was repeatedly sexually abused as a child by an uncle in an elevator. When she told her mother she was not believed.

15. Ms. Bellinger began to dissociate when her uncle abused her, she remembered she would always turn her head and stare at the elevator gate until her uncle finished.

16. Her evaluator concluded Ms. Bellinger's learned behaviors had her react as she did as a five-year-old, "Her inability to stop Ken Scott's acts of emotional and sexual abuse towards her in the workplace can be attributed to … "Her history of dissociation during sexual abuse she experienced as a child and young adult. She reported entering a dissociative state during Mr. Scott's abuse, during Mr. Scott's abuse, her historical defense against sexual and emotional abuse."

17. Scott knew of Ms. Bellinger's past problems with alcohol and used his status as a recovering alcohol to bond with Ms. Bellinger, but also to exploit this closeness.

18. When they met Ms. Bellinger was a year into her recovery process from alcoholism.

19. Scott recounted to Ms. Bellinger when he was an alcohol abuse counselor when he started his career. Scott told Ms. Bellinger that he and his partner would hit on women in early recovery because they were an 'easy target.'

20. Scott also knew of the precarious financial position Ms. Bellinger was in as her husband was suffering from a severe liver disease and unable to work.

21. Scott knew Ms. Bellinger also could not afford to lose the health insurance she received as an employee of AIHS and told her this.

22. Scott would bring up that her husband needed his insurance.

23. Scott would tell Ms. Bellinger, "You'll never be able to find anyone to take him" (for an insurance policy, given his health issues).

24. At the time insurance companies could refuse to cover preexisting conditions and as it was Ms. Bellinger was paying 1200 per month for his health insurance premiums premium, in addition to his medications.

25. Scott's office contained a huge two-way mirror through which he could observe other agency employees and anyone coming into the area.

26. He used the two-way mirror to evade detection by other employees.

27. Ms. Bellinger was in a staff meeting when the conversation turned to the subject of trauma informed care.

28. Ms. Bellinger mentioned that they needed to be aware that some coworkers may be dealing with trauma at the workplace and recounted when one of her childhood abusers came to the clinic after she started working there.

29. She recounted how she "just froze." Another staff member realized her discomfort and took over with the patient.

30. Incredibly, Scott responded to this by stating "well, it sounds like you have some issues you haven't dealt with yet. Let's move on."

31. This incident was the catalyst for Ms. Bellinger bringing her concerns to AIHS to try to put a stop to the behavior.

32. Ms. Bellinger complained internally to the Board of AIHS on January 7, 2020.

33. Feeling as if her complaints were not being take seriously and feeling traumatized by the situation Ms. Bellinger followed the recommendation of her doctor not to return to work

34. Ms. Bellinger later learned that Scott had tendered his letter of resignation to the Board on January 8, 2020, but that the Board decided to have him remain as Executive Director until he was allowed to retire on February 28, 2020.

35. MS. Bellinger struggled to find work after leaving AIHS but finally landed a job with lower pay and benefits than the job at AIHS.

36. During the course of her new employment, Ms. Bellinger has been asked to undergo a background check.

37. Ms. Bellinger understands that personnel at AIHS, with the approval of its Executive Director, Defendant Roxanne M. Lavillie Unabia, falsely accused Ms. Bellinger of financial improprieties, although there had been no accusations or any investigation of her prior to her leaving.

38. Ms. Bellinger believes that the false accusations are not only defamatory but are retaliatory in nature for her having the temerity to file EEOC charges against AIHS and complain of her treatment at the hands of Mr. Scott.

39. Ms. Bellinger filed a charge with the EEOC on February 22, 2020, the agency investigated and issued a Notice of Right to Sue which is attached as an exhibit to this complaint.

**COUNT I – Title VII**
**SEX ASSAULT, HARASSMENT AND DISCRIMINATION**

40. Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-39.

41. Based on the allegations as detailed above, AHSI is liable for the actions of its former Executive Director Kenneth Scott for his severe and ongoing sexual assault and harassment of Plaintiff Bobbie Bellinger.

42. Because its Executive Director abuses Ms. Bellinger as he did, AIHS violated Title VII which prohibits discrimination in the workplace.

43. Such treatment of Ms. Bellinger and the harassment of other women employees of AIHS changes the terms and conditions of their jobs and subjects them to treatment which is not visited upon male employees of AIHS.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendant AHSI as follows:

- A. Declaring that Defendant AIHSI has violated Ms. Bellinger's right to be free from sexual assault harassment and discrimination in her employment;

- B. Ordering Defendant AHSI to reinstate Ms. Bellinger to her position with full salary and benefits.

- C. Awarding any actual monetary losses sustained by the Plaintiff as a direct result of the violations including past and/or future wages;

- D. Awarding interest on the amount described in the items listed above;

- E. Awarding make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

- F. Ordering Defendant AIHS from any further prohibited discrimination against her;

- G. Awarding compensatory damages against AIHS for subjecting her to abusive, criminal and tortious treatment and for the effect it has on her emotional and mental health and stability;

- H. Punitive damages in an amount sufficient to deter Defendant AHSI from allowing employees to be treated as was Ms. Bellinger;

- I. An award of attorney's fees pursuant to 42. U.S.C. Section 1988;

- J. Costs incurred in filing and prosecuting this action; and

K.        Such additional relief as this Court deems appropriate and just

## COUNT II
## BATTERY

44.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-43.

45.     Plaintiff brings this count against Defendant Kenneth Scott personally.

46.     By repeatedly sexually assaulting Ms. Bellinger against her wishes, Defendant Scott has committed the tort of battery against Plaintiff.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendant Kenneth Scott as follows:

    A. Awarding damages in an amount to be determined by a jury at trial

    B. Awarding any interest on the amount described in the items listed above;

    C. Awarding punitive damages against Scott in an amount sufficient to discourage him and others from abusing their power and subjecting others to this conduct;

    D. Awarding costs incurred in filing and prosecuting this action; and

    E. Such additional relief as this Court deems appropriate and just.

## COUNT III
## DEFAMATION PER SE

47.     Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-46.

48.     Plaintiff brings this count against Defendants AIHS and Roxanne Lavallie-Unabia.

49.     By falsely reporting to her employer, which was conducting a background clearance for Ms. Bellinger, that Ms. Bellinger had engaged in financial improprieties

when she was employed by AIHS, Defendant AIHS defamed Ms. Bellinger by falsely accusing her of criminality, Defendant AIHS has committed the tort of defamation in that it has impugned Ms. Bellinger's reputation and damaged her standing with her current employer. It is likely that she will lose her job due to AIHS' defamatory actions.

50. On information and belief, Defendant Roxanne Lavallie-Unabia authorized and directed others to make the aforementioned false and defamatory statements to Ms. Bellinger's current employer about Ms. Bellinger or made them herself.

51. In so doing Defendant Roxanne Lavallie-Unabia, has committed the tort of defamation against Ms. Bellinger and is liable for her actions.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants AIHS Shelton as follows:

A. Awarding presumed damages in an amount to be determined by a jury at trial

B. Awarding punitive damages against Shelton in an amount sufficient to discourage individual Defendants from abusing their power and subjecting others to this conduct;

C. Awarding costs incurred in filing and prosecuting this action; and

D. Such additional relief as this Court deems appropriate and just.

## COUNT IV
## INTERFERENCE WITH CONTRACT/ PROSPECTIVE ECONOMIC ADVANTAGE

52. Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-51.

53. Plaintiff brings this count against Defendants AIHS and Roxanne Lavallie-Unabia.

54. Defendants AIHS and Lavaille-Unabia knew Ms. Bellinger Gray had either a contract or an expectancy with her current employer.

55. Defendants AIHS and Lavaille-Unabia interfered with Ms. Bellinger's employment contract or expectancy by promoting and spreading spurious lies about her accusing her of financial improprieties.

56. And, in so doing, Defendants have created a cloud around Ms. Bellinger which has had, and is likely to have, deleterious effects on her employment.

57. Defendants did so with the intent to harm Ms. Bellinger because she raised and pursued claims of Sexual assault and harassment against Defendant Scott.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

    A. Any actual past and future monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

    B. The interest on the amount described in the items listed above,

    C. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

    D. Punitive damages to deter Defendants from abusing their power and using their position to subjecting others to this conduct;

    F. Costs incurred in filing and prosecuting this action; and

    G. Such additional relief as this Court deems appropriate and just

## COUNT V
## NEGLIGENCE

58. Plaintiff re-alleges and incorporates here, by reference, the allegations set forth in paragraphs 1-57.

59. Plaintiff brings this count against Defendants Roxanne Lavallie-Unabia, June Gerdes and Does 1-3.

60. The Board members had a duty to supervise Kenneth Scott and to enforce Federal anti-discrimination law and AIHS' anti-sexual harassment policy.

61. Board members were aware that Kenneth Scott engaged in inappropriate behavior with staff and became aware of Scott's horrifying treatment of Ms. Bellinger.

62. Instead of disciplining Mr. Scott the Board rescinded his resignation and allowed him to continue on as Executive Director for nearly two months after learning of Ms. Bellinger's abuse.

63. Board members June Gerdes, Roxanne Lavallie-Unabia and Does 1-3 knew or should have known about Scott's abusive treatment of women employees of AIHS and chose to look the other way.

64. By failing to adequately supervise, Kenneth Scott, so as to prevent and/or put a stop to his abusive treatment of Ms. Bellinger, Board members June Gerdes, Roxanne Lavallie-Unabia and Does 1-3 committed the tort of negligence.

Wherefore, Plaintiff, respectfully requests that the Court enter a judgment against Defendants as follows:

    A. Any actual past and future monetary losses sustained by the Plaintiff as a direct result of the violations including past and future wages;

    B. The interest on the amount described in the items listed above,

    C. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

    D. Punitive damages to deter Defendants from failing to put a stop to abuse of AIHS staff and allowing others to use their position of power to subject others to this conduct;

    F. Costs incurred in filing and prosecuting this action; and

    G. Such additional relief as this Court deems appropriate and just

**Jury Demand**

Plaintiffs hereby demand a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

                                                   By:   /s/ Jorge Sanchez
                                                                One of Plaintiff's attorneys.

Jorge Sanchez
Lopez & Sanchez
77 W. Washington, Suite 1313,
Chicago, IL 60602
attysanchez@gmail.com
(312) 420-6784
ARDC# 6244796

Dated: September 15, 2021